**DAYTON SUPERIOR CORPORATION,**

        **Plaintiff,**

-v-

**JULIAN Z. YAN, et al.,**

        **Defendants.**

**Case No. 3:12-cv-380**

**Judge Thomas M. Rose**

---

**ENTRY AND ORDER DENYING KLOVER'S AND EPCO'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Doc. #17) AND DENYING KLOVER'S AND EPCO'S MOTION TO TRANSFER VENUE (Doc. #17)**

---

Plaintiff Dayton Superior Corp. ("Superior") brings this action against Defendants Epoxy Products Company, LLC ("EPCO"), Julian Yan ("Yan") and Michael Klover ("Klover") based upon their misappropriation of trade secrets and confidential and proprietary information in violation of Ohio law and contractual obligations. On November 13, 2012, this Court restrained Yan, Klover and EPCO from using, disclosing and communicating Superior's confidential information and trade secrets. (Doc. #9.)

Now before the Court is a Motion To Dismiss for Lack of Personal Jurisdiction made by EPCO and Klover. EPCO and Klover seek dismissal pursuant to Fed. R. Civ. P. 12(b)(2). In the alternative, EPCO and Klover seek a transfer of venue to the United States District Court for the Western District of Missouri pursuant to 28 U.S.C. § 1404(a). Defendant Yan has not yet made an appearance in this case.

On November 21, 2012, the Court issued an expedited briefing schedule on Klover's and EPCO's Motion To Dismiss. (Doc. #20.) Pursuant to this expedited briefing schedule, Superior

has responded (doc. #23) and EPCO and Klover have replied (doc. #27.) The Motion for dismissal is, therefore, ripe for decision. The relevant jurisdictional facts will first be set forth followed by applicable legal provisions and an analysis of the Motion.

## RELEVANT JURISDICTIONAL FACTS

### Superior and Unitex

Superior's business is the design, manufacture and distribution of specialized concrete construction products. (Declaration of Eric R. Zimmerman ("Zimmerman Decl.") ¶ 2 Nov. 23, 2012.) Superior was founded in 1959 and has since been headquartered in Dayton, Ohio. (Id.)

Effective September 13, 2010, Superior purchased certain assets of Zea Corporation, including the trade name Unitex and Unitex's trade secrets and confidential information. (Id. ¶¶ 3,4.) Zea Corporation previously did business as Unitex. (Id.) Unitex manufactured and sold concrete construction chemicals and related products, specializing in epoxy-based products. (Id.)

After its acquisition by Superior, Unitex's operations were integrated into the global operation of Superior. (Id. ¶ 5.) Unitex no longer operated as a free-standing, independent business unit. (Id.) All of Unitex's human resources, IT and finance functions, among others, were centralized with Superior in Dayton, Ohio. (Id.)

### Klover's Contacts With Superior

On September 13, 2010, Kenneth Tynes ("Tynes"), Superior's Vice President of Human Resources, met with Unitex sales and technical support employees in Kansas City to discuss Superior's acquisition of Unitex, the transition process, Superior's employment benefits and related employment matters. (Declaration of Kenneth W. Tynes ("Tynes Decl." ¶ 2 Nov. 23, 2012.) Klover and Yan were present at this meeting. (Id.)

At this meeting, Tynes distributed Superior new employee packets. (Id.) The Unitex employees were given the opportunity to apply for employment with Superior by completing and returning the application materials to Superior's Human Resources department in Ohio. (Id.)

Klover returned his application for employment by Superior in September of 2010. (Id. at ¶ 3.) Klover indicated that he was willing to travel and had no geographic preference on his application. (Id.) Klover completed and returned to Ohio several other employment-related forms. (Id.) He also entered into additional agreements including a Confidential Information & Inventions Agreement and a Conflict of Interest Agreement. (Id. at ¶ 4, Exs. 1 and 2.)

All of Superior's human resources activities occur through Superior's headquarters in Ohio. (Id. ¶ 5.) For example, all payroll, health insurance, life insurance, 401K Savings Plan and other benefit programs are administered out of Superior's Corporate Office in Ohio. (Id.)

Klover participated in these benefit programs. (Id.) For example, Klover participated in Superior's Fitness Club Membership reimbursement program in 2011. (Id. at ¶ 6.) To do so, Klover faxed a request for reimbursement to Superior's Corporate Office which was processed at the Corporate Office. (Id.)

Klover received a base salary and commissions from Superior. (Id. at ¶ 7.) Klover's salary and commissions were processed through Superior's headquarters in Ohio and were drawn from a local bank. (Id.) Klover had to work with Superior personnel in Ohio regarding all aspects of his commissions and his commissions were calculated in Ohio. (Id. at ¶ 9.)

For example, toward the end of 2011, Klover started to "lobby" Richard A. Smith ("Smith"), Superior's Sales Support and Analysis Manager based in Dayton, Ohio, regarding Klover's 2011 commission. (Declaration of Thomas W. Roehrig ("Roehrig Decl.") ¶ 4 Nov. 23,

2012.) Klover argued that he should be paid a commission or a greater commission on certain accounts. (Id.) After receiving the calculation of the amount of his commission, Klover raised a dispute with Smith in Ohio. (Id.) Klover then escalated this dispute to Superior's CEO, Rick Zimmerman ("Zimmerman"), in Ohio. (Id.)

On January 30, 2012, Klover emailed Zimmerman, who was in Ohio, to dispute the amount of his 2011 commission. (Zimmerman Decl. ¶ 8.) Zimmerman responded confirming Klover's commission terms. (Id.) Klover responded by email and demanded an appointment to review the commission calculation. (Id.) On January 31, 2012, Klover renewed his commissions calculations with Smith and continued to press his dispute with Zimmerman, including emails on February 2, 2012. (Id.) Also, Klover and Zimmerman spoke several times by telephone to attempt to resolve the commission dispute. (Id.)

In another example, in January of 2012, Klover requested an "out of cycle" check from Superior for his 2011 commissions due to "urgent" circumstances. (Id. at ¶ 5.) Superior originally mistook Klover's request as being due to personal issues but now suspects his request was related to his new company, EPCO. (Id.)

Klover also visited Ohio at least once. (Second Declaration of Andy Gaines ("Gaines Decl. 2") ¶ 2 Nov. 23, 2012.) On December 1, 2011, he participated in a sales meeting in Ohio run by Andy Gaines ("Gaines"), Superior's General Sales Manager for Chemical Products. This meeting covered such topics as prospective sales strategies and plans, pricing strategies and inventory issues. (Id.) This information was proprietary and intended to be confidential. (Id.) EPCO was organized fourteen (14) days later. (Ex. D.)

**EPCO**

EPCO is a limited liability company formed under the laws of the State of Missouri with its principal place of business in Grandview, Missouri. (Affidavit of Like Ungashick ("Ungashick Aff.") ¶ 3 Nov. 16, 2012.) EPCO has two (2) members, Luke Ungashick and Klover. (Doc. #8.) Luke Ungashick is a citizen of Missouri and Klover is a citizen of Kansas. (Id.)

EPCO has no office locations in Ohio and no employees located in Ohio. (Ungashick Aff. ¶ 4.) EPCO is not licensed or registered to do business in Ohio and does not do business in Ohio. (Id. at ¶ 5.) EPCO does not derive any revenue from goods sold or services rendered in Ohio. (Id. at ¶ 6.) Finally, EPCO has never been a party to any civil action venued in Ohio and has never made an appearance in an Ohio court. (Id. at ¶ 7.)

Klover resigned from Superior on February 6, 2012. (Gaines Decl. 2 ¶ 3.) However, before he resigned, Klover established a private-label customer account for EPCO. (Declaration of Scott M. Bain ("Bain Decl.") ¶ 3. Nov. 23, 2012)

Klover took steps to prevent Superior management from learning about EPCO's customer account. (Id. at ¶ 4.) He did not complete new account documentation and submit it to Scott Bain, Superior's Technical Account Manager. (Id.) He also established below-market pricing for the EPCO account. (Id.)

From February through April of 2012, EPCO ordered a total of about $17,000 worth of epoxy-based products from Superior. (Id. at ¶ 5.) Klover attempted to have the Superior products delivered with blank labeling, apparently intending to put the EPCO label on the products. (Id.)

After discovering the account, Bain and another individual went to EPCO's address to discuss the account and the amounts owed. (Id. at ¶ 6.) The individual with Bain asked to speak

with Linda Ungashick, who is listed as the organizer of EPCO, and Ms. Ungashick refused to see them. (Id.)

Later, in May of 2012, Bain and Gaines had a conference call with EPCO employee Joe Murphy to discuss what EPCO was doing with the products purchased from Superior. (Id. ¶ 7.) Murphy falsely told them that Automated Ingredient Systems ("AIS"), EPCO's companion company, was using Superior's epoxy-based products as grouting and installation material for its food-service industry equipment. (Id.)

## Yan

In addition to executing several employment forms like Klover, Yan also executed a Consulting Services Agreement. (Declaration of David DeBruler ("DeBruler Decl.") ¶¶ 21-23 Nov. 6, 2012.) The Consulting Services Agreement discusses Yan's duty to keep Superior's Confidential Information secret. (Id. at ¶ 23.)

All of the chemical formulas used in EPCO's products were provided by Yan. (Affidavit of Laszlo Goodell ("Goodell Aff.") ¶ 12 Oct. 29, 2012.) Klover and EPCO built EPCO's business using product formulations provided by Yan that he had obtained while working at Superior. (Goodell Aff. ¶¶ 9,12; DeBruler Decl. ¶ 25.)

## Klover

Klover was employed by Unitex in Missouri and continued his employment with Superior in Missouri. (Affidavit of Michael R. Klover ("Klover Aff.") ¶¶ 4, 5 Nov. 16, 2012.) Each of the agreements executed by Klover was executed by him in Kansas in connection with his employment in Missouri. (Id. at ¶ 6.) Klover's "New Employee packet" was submitted to Superior at Superior's office in Kansas City, Missouri. (Second Supplemental Affidavit of

Michael R. Klover ¶ 3 Nov. 27, 2012.) Klover says he has never conducted or solicited any business in Ohio. (Klover Aff. ¶ 10.) He also says that he did not personally derive any revenue from goods sold in Ohio or services rendered in Ohio in connection with his employment with Unitex and Superior. (Id. at ¶ 11.)

While working for Superior, Klover initially reported directly to John Drissinger, who was located in Missouri. (Id. at ¶ 8.) He later reported to Leslie Gaines, who was located in Texas. (Id. at ¶ 9.)

Superior's Complaint alleges that Klover has contacted several of Superior's customers, offering products for sale that were identical or similar to Superior's products. (Compl. ¶ 46.) Also, Klover, Yan and EPCO attempted to hide their activities from Superior. For example, in April of 2012, a driver that provided hauling services to EPCO witnessed Klover, Luke Ungashick and Joe Murphy, with Yan present, instruct AIS and EPCO employees to deny any knowledge of them and to say that they did not work there. (Declaration of Roy Parvin ("Parvin Decl.") ¶ 2 Nov. 23, 2012.)

## RELEVANT LEGAL PROVISIONS

When a motion to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) is made, the plaintiff has the burden of proving that jurisdiction exists. *Burnshire Development, LLC v. Cliffs Reduced Iron* Corp., 198 F. App'x 425, 429 (6th Cir. 2006) (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996). As a part of the burden of proof, the plaintiff's burden of persuasion depends upon whether the court conducts an evidentiary hearing on the motion to dismiss.

When an evidentiary hearing is held, the plaintiff must establish jurisdiction by a

preponderance of the evidence. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). When there is no evidentiary hearing, as is the case here, Superior must make only a prima facie showing and the pleading and affidavits, when in conflict, are viewed in a light most favorable to Superior. *Burnshire*, 198 F. App'x at 429.

The Sixth Circuit applies a two-part test to determine if personal jurisdiction exists. *Logan Farms v. HBH, Inc. DE*, 282 F. Supp. 776, 795 (S.D. Ohio 2003). First, the federal court must determine if the law of the forum state, Ohio in this case, provides for personal jurisdiction. *Nationwide Mutual Insurance Co. v. Tryg International Insurance Co, Ltd.*, 91 F.3d 790, 793 (6th Cir. 1996). If so, the federal court must then determine if the personal jurisdiction comports with due process. *Id*.

The Sixth Circuit has explained that there are two kinds of personal jurisdiction that can be exercised, general and specific. *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006). General jurisdiction exists when the defendant's contacts with the forum state are "substantial" and "continuous and systematic," such that the state may exercise personal jurisdiction even if the action does not relate to the defendant's contacts with the state. *Youn*, 324 F.3d at 418. Specific jurisdiction exists when the contacts giving rise to jurisdiction relate to the claim that is before the court. *Id*.

Ohio does not recognize general jurisdiction over non-residents. *Signom v. Schenck Fuels Inc.*, No. C-3-07-037, 2007 WL 1726492 at *3 (S.D. Ohio June 13, 2007). In Ohio, jurisdictional analysis of non-residents, such as the Klover and EPCO here, is based only upon specific jurisdiction that may be available under Ohio law. *Id*.

### Ohio's Long-Arm Statute

Specific jurisdiction under Ohio law is provided by Ohio's long-arm statute, Ohio Rev. Code § 2307.382. Ohio's long-arm statute enumerates nine (9) categories of conduct that subject an entity to personal jurisdiction in Ohio if a cause of action arises out of such conduct. *Shaker Construction Group, LLC v. Shilling,* No. 1:08cv278, 2008 WL 4346777 at *2 (S.D. Ohio Sep. 18, 2008). Ohio's long-arm statute provides as follows:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside the state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

(7) Causing tortious injury to any person by a criminal act, any element of which takes place in this state, which he commits, or in the commission of, which he is guilty of complicity;

(8) Having an interest in, using or possessing real property in this state;

(9) Contracting to insure any person, property, or risk located within this state

at the time of contracting.

(B) For purposes of this section, a person who enters into an agreement, as a principal, with a sales representative for the solicitation of orders in this state is transacting business in this state. As used in this division, "principal" and "sales representative" have the same meanings as in section 1335.11 of the Revised Code.

(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

Superior asserts that this Court has personal jurisdiction over Klover and EPCO pursuant to sections (A)(1), (A)(3), (A)4) and (A)(6). The law regarding each will be next be identified.

### Section 2307.382(A)(1)

Section (A)(1) provides for personal jurisdiction as to a cause of action arising from the defendant or the defendant's agent transacting any business in Ohio. The Supreme Court of Ohio has indicated that Section (A)(1) is "very broadly worded and permit[s] jurisdiction over nonresident defendants who are transacting any business in Ohio." *Genesis Insurance Co. v. Alfi*, 425 F. Supp. 2d 876, 894 (S.D. Ohio 2006)(citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477 (Ohio 1990), *cert. denied*, 499 U.S. 975 (1991)). The Ohio Supreme Court has also indicated that the word "transact" means "to carry on business," and "to have dealings," and it is broader than the word "contract." *Kentucky Oaks*, 559 N.E.2d at 480. Further, when analyzing Section (A)(1), the court has no better guideline than the wording of Section (A)(1) and must rely upon a case-by-case determination. *Genesis*, 425 F. Supp.2d at 894. However, the mere existence of a contract or the mere solicitation of business in Ohio is insufficient to confer jurisdiction under section (A)(1). *Burnshire*, 198 F. App'x at 431-32. There must be ongoing, substantive contacts. *Id.*

Factors To Be Considered

Courts have considered two factors to help determine whether a non-resident defendant "transacted business" within the meaning of Ohio's Long-Arm Statute. *Shaker Construction*, 2008 WL 4346777 at * 3. The first factor is whether the non-resident defendant initiated the business dealing. *Id.*(citing *Paglioni & Assoc., Inc. v. WinnerComm, Inc.*, No. 2:06-cv-276, 2007 WL 852055 at *9 (S.D. Ohio Mar. 16, 2007)). If the non-resident reached out to the plaintiff in Ohio to create a business relationship, the non-resident transacted business in Ohio. *Id.*

However, the question of who initiates the contact is but one factor to be considered and the determination is not always dependent upon who initiates the contact. *Military Supply, Inc. v. Reynosa Construction, Inc.*, No. 19326, 2000 WL 109783 at n.3 (Ohio Ct. App. Jan. 26, 2000). The balance of the evidence must be considered to determine in which jurisdiction the parties undertook their discussions and communications and on what terms. *Ricker v. Fraza/Forklifts of Detroit*, 828 N.E.2d 205, 209 (Ohio Ct. App. 2005). With regard to "reaching out," as a general rule, the use of interstate lines of communication such as mail and telephones does not automatically subject a defendant to the jurisdiction of the courts in the forum state. *Benjamin v. KPMG Barbados*, No. 03AP-1276, 2005 Ohio App. LEXIS 1860 at *P48 (Ohio Ct. App. Apr. 28, 2005).

The second factor to be considered is whether the parties conducted their negotiations or discussions in Ohio or with terms affecting Ohio. *Shaker Construction*, 2008 WL 4346777 at *3. If the parties negotiated in Ohio with provisions affecting Ohio, the non-resident transacted business in Ohio. *Id.* However, merely directing communications to an Ohio resident for the purpose of negotiating an agreement, without more, is insufficient to constitute "transacting

-11-

business." "Rather, there must additionally be some continuing obligation that connects the non-resident defendant to the state or some terms of the agreement that affect the state." *Id.* (citing *Kentucky Oaks Mall*, 559 N.E.2d at 480).

Relevant Examples

Courts have found personal jurisdiction pursuant to section (A)(1) in a variety of circumstances. For example, section (A)(1) confers jurisdiction over an out-of-state defendant who breached a surety agreement that he had negotiated with an individual who was an Ohio resident when the surety agreement was negotiated and executed. *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998), *cert. denied*, 525 U.S. 810 (1998). Section (A)(1) confers jurisdiction over some non-residents who solicited business in Ohio and shipped goods to Ohio. *U.S. Sprint Communications Company Ltd. v. Mr. K's Foods, Inc.*, 624 N.E.2d 1048, 1052 (Ohio 1994). Section (A)(1) confers jurisdiction where a vehicle being sold to an Ohio resident was located in the non-resident's state and the vehicle was picked up in the non-resident's state but the negotiations and dealings were primarily in Ohio and the non-resident defendant regularly conducted business in Ohio. *Muzzin v. Brooks*, 859 N.E.2d 584, 588 (Ohio Ct. App. 2006). Section (A)(1) confers jurisdiction over a non-resident where the non-resident initiated business dealings in Ohio, communications took place between the Ohio resident and the non-resident sent payments to the Ohio resident's office. *Ricker v. Bobcat of Orlando, Inc.*, No. 04AP-481, 2004 WL 2591244 at * 3 (Ohio Ct. App. Nov. 16, 2004). Section (A)(1) confers personal jurisdiction where an out-of-state employee received reports, proposals and agreements directly from an Ohio company's headquarters, regularly accessed information stored on the Ohio company's computers in Ohio and emailed coworkers located in Ohio even though the non-

-12-

resident employee had only visited Ohio on occasion. *The Rightthing, LLC v. Brown*, No. 3:09 CV 135, 2009 WL 249694 at *3 (N.D. Ohio Feb. 2, 2009). Finally, section (A)(1) confers personal jurisdiction where an out-of-state employee who abused a long-term employment relationship with an Ohio company, provided weekly expense claims, monthly performance reports, conducted routine telephone and email communications with the Ohio company and transferred money. *Rexam Healthcare Packaging, Inc. v. Osiris Medical, Inc.*, No. 3:09 CV 1584, 2010 WL 819063 at *2 (N.D. Ohio Mar. 9, 2010).

Courts have also found that personal jurisdiction pursuant to Section (A)(1) does not exist in a variety of circumstances. For example, Section (A)(1) does not confer jurisdiction where the non-resident sold three products to an Ohio resident who solicited the sales, and the non-resident did not solicit business in Ohio and did not own property in Ohio. *Buflod v. Von Wilhendorf*, LLC, No. CA2006-02-022, 2007 WL 210790 at * 3 (Ohio Ct. App. Jan. 29, 2007). Section (A)(1) does not confer jurisdiction where an off-shore defendant completed auditing services for off-shore affiliates of an Ohio insurance company, directed no correspondence to Ohio, had no contractual relations with persons in Ohio and had no operations in Ohio. *Benjamin,* 2005 Ohio App. LEXIS 1860 at *48. Section (A)(1) does not confer jurisdiction where the non-resident defendant did not initiate the negotiations, where there were no allegations that any negotiations or terms of the agreement affected Ohio and where the project that was the subject of the agreement was not located in Ohio. *Shaker Construction*, 2008 WL 4346777 at *3. Section (A)(1) does not confer personal jurisdiction over a contract dispute where an Ohio resident entered into the contract to move to Ohio based upon negotiations that occurred in a non-resident state. *Joffe v. Cable Tech, Inc.*, 839 N.E.2d 67, 74 (Ohio Ct. App. 2005).

Section (A)(1) does not confer jurisdiction where the plaintiff initiated the contacts, where the non-resident was not based in Ohio and had no agents or real property in Ohio and where the work performed was not in Ohio even though there were continuing communications between the non-resident and the plaintiff located in Ohio. *Military Supply*, 2000 WL 109783 at *3.

Section (A)(1) does not confer personal jurisdiction where a non-resident ordered goods from an Ohio resident by telephone and the goods where shipped to the non resident state. *Ohio State Tie & Timber, Inc. v. Paris Lumber Co.*, 456 N.E.2d 1309, 1313 (Ohio Ct. App. 1982), *overruled on other grounds by Kentucky Oaks Mall*, 559 N.E.2d 477 (Ohio 1990). Finally, section (A)(1) does not confer jurisdiction over a former employee where the former employee was employed in another state for the purpose of providing services in stores located in the other state, the employee did not reach out to the former employer in Ohio, the employer did not transact any business in Ohio and the employer only did business in the non-resident state. *Buckeye Check Cashing of Arizona, Inc. v. Lang*, No. 2:06-cv-792, 2007 WL 641824 at *10 (S.D. Ohio Feb. 23, 2007).

## Section 2307.382(A)(3)

Section (A)(3) provides for personal jurisdiction over a non-resident when the non-resident causes tortious injury by an act or omission in Ohio. Section (A)(3) does not confer personal jurisdiction where all of the alleged tortious conduct occurred outside of Ohio. *Buckeye*, 2007 WL 641824 at *10. However, section (A)(3) confers personal jurisdiction where a non-resident, while working in an Ohio facility, violated copyright laws by reproducing copyrighted materials and misappropriated confidential information without the owner's permission. *Stolle Machinery Co., LLC v. RAM Precision Industries*, No. 3:10-cv-155, 2011 WL 6293323 at *3

(S.D. Ohio Dec. 15, 2011).

## Section 2307.382(A)(4)

Section (A)(4) provides for personal jurisdiction over an alleged tortfeasor for causing tortious injury in Ohio by an act or omission outside of Ohio if the alleged tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in Ohio. *See e.g. Buckeye*, 2007 WL 641824 at *10. For example, section (A)(4) confers personal jurisdiction where a non-resident employee allegedly breached provisions in employment agreements, regularly communicated with other Ohio employees and physically attended meetings in Ohio shortly before resigning. *International Paper Co. v. Goldschmidt*, No. 1:11-cv-910, 2012 WL 1902557 at * (S.D. Ohio May 25, 2012). Section (A)(4) also confers personal jurisdiction over a non-resident who electronically enters an Ohio company's computer system to steal trade secrets, who was regularly compensated by an Ohio company and who regularly received reports, proposals and agreements from an Ohio company's headquarters. *Rightthing*, 2009 WL 249694 at * 4,

## Section 2307.382(A)(6)

Section (A)(6) provides for personal jurisdiction over a person for causing tortious injury in Ohio to any individual by an act outside of Ohio committed with the purpose of injuring individuals when the person might reasonably have expected that some individual would be injured thereby in Ohio.

Courts have found the existence of personal jurisdiction under section (A)(6) in a variety of circumstances. For example, section (A)(6) confers personal jurisdiction over a non-resident

where the theft and conversion of a catalogue and customer list occurred upon the non-resident's departure from Ohio and the contract at issue was executed in Ohio. *Innovative Digital Equipment, Inc. v. Quantum Technology, Inc.*, 597 F.Supp. 983, 987 (N.D.Ohio 1984). Section (A)(6) confers personal jurisdiction over a non-resident where a tortious injury occurred in Ohio when the non-resident wrongfully converted funds of an Ohio resident, manipulated and controlled accounts of an Ohio resident and provided limited funds for an Ohio resident's personal use while living in Ohio. *Toma v. Toma*, No. 82118, 2003 WL 21957022 at * 3 (Ohio Ct. App. Aug. 14, 2003), *appeal not allowed*, 800 N.E.2d 48 (Ohio 2003). Section (A)(6) confers personal jurisdiction where a non-resident allegedly committed conversion, fraud and civil conspiracy outside of Ohio knowing that the stock involved was of an Ohio corporation. *Herbruck v. LaJolla Capital*, No. 19586, 2000 WL 1420282 at * 3 (Ohio Ct. App. Sept. 27, 2000). Section (A)(6) confers personal jurisdiction over an out-of-state company that has infringed on an Ohio company's copyrights and uses an Ohio company's proprietary information. *Stolle*, 2011 WL 6293323 at * 6. Section (A)(6) confers personal jurisdiction over non-resident, former employees who allegedly tortiously injured an Ohio company by misusing the Ohio company's trade secrets and converting the Ohio company's property because such acts cause loss in Ohio when the company is located in Ohio. *Safety Today, Inc. v. Roy*, No. 2:12-cv-510, 2012 WL 2374984 at *2 (S.D. Ohio June 22, 2012). Section (A)(6) confers personal jurisdiction where a non-resident, former employee secretly conspired to start a competitor company, used an Ohio company's client lists, and began contacting the Ohio company's customers. *Coast To Coast Health Care Services, Inc. v. Meyerhoffer*, No. 2:10-cv-734, 2012 U.S. Dist. LEXIS 6250 at *9-10 (S.D. Ohio Jan. 19, 2012). Finally, section (A)(6) confers personal jurisdiction over a

competing limited liability company started by a former employee who was subject to personal jurisdiction. *Coast To Coast Health Care Services, Inc. v. Meyerhoffer*, NO. 2:10-cv-734, 2011 U.S. Dist. LEXIS 65181 at *12-13 (S.D. Ohio June 14, 2011); *see also Ajuba International, LLC v. Saharia*, No. 11-12936, 2012 WL 1672713 (E.D. Mich. May 14, 2012).

Courts have also found that personal jurisdiction, pursuant to section (A)(6), does not exist in a variety of circumstances. For example, section (A)(6) does not confer personal jurisdiction over a non-resident defendant for an alleged defamatory statement made out of state without showing more than minimum contacts in Ohio. *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110, 1119 (6th Cir. 1994) (a tort action can be brought in the location where the injury is suffered), *cert. denied*, 513 U.S. 962 (1994). Section (A)(6) does not confer personal jurisdiction where an alleged tortious injury that occurred in Ohio was ancillary to the main issue - a determination of whether non-resident had duty to support a child. *State ex rel. Stone v. Court of Common Pleas of Cuyahoga County, Juvenile Division*, 470 N.E.2d 899, 901 (Ohio 1984). Finally, section (A)(6) does not confer personal jurisdiction where the injury occurred in another state. *VanCamp v. VanCamp*, Nos. CA2001-03-058, CA2001-03-059, CA2001-03-060, 2002 WL 4472 at * 4-5 (Ohio Ct. App. Dec. 31, 2001).

In all of the examples, section (A)(6) conferred personal jurisdiction when the claim in question was related to property located in Ohio or the tortious injury was suffered in Ohio. In contrast, section (A)(6) did not confer jurisdiction when the claim in question was related to property not located in Ohio or the injury was not suffered in Ohio.

**Due Process**

The Sixth Circuit has established a three part test for determining whether personal

jurisdiction under Ohio's Long-Arm Statute comports with the Due Process Clause. *Burnshire*, 198 F. App'x at 430(citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)). First, the non-resident must purposely avail himself of the privilege of acting in Ohio or causing a consequence in Ohio. *Id.* Second, the cause of action must arise from the defendant's activities in Ohio. *Id.* Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with Ohio to make the exercise of jurisdiction over the defendant reasonable. *Id.*

### "Purposeful Availment"

The purposeful availment prong of the constitutional analysis is coextensive with the "transacting any business" standard of Ohio's Long-Arm Statute. *Id.* at 432. Identical standards are used to interpret the "transacting any business" standard of Ohio's Long-Arm Statute and the "purposeful availment" prong of the constitutional standard. *Id.*

### "Arising From"

The "arising from" prong requires only that the cause of action have a substantial connection with the defendant's activities in Ohio. *Genesis*, 425 F. Supp. 2d at 893. The Sixth Circuit has found that the requirement that contacts be the proximate cause of the asserted harm under Ohio's Long-Arm Statute is more restrictive than the "arising from" standard applicable to the Due Process analysis. *Burnshire*, 198 F. App'x at 430 n.2. However, "[t]his factor does not require that the cause of action formally arise from a defendant's contacts with the forum, rather this criterion requires only that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." *International Paper*, 2012 WL 1902557 at *6 (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). Thus, in the context of a trade

secret claim, the operative facts relate to Ohio where the defendant acquires trade secrets by virtue of his employment with an Ohio-based company and the misappropriation causes harm in Ohio. *Id.* Such facts may also tie in a company formed by the former employee by virtue of the company's ratification of the misappropriation. *Stolle*, 2011 WL 6293323 at *9.

### "Substantial Connection"

The "substantial connection" prong requires that the acts of the defendant or the consequences caused by the defendant must have a substantial enough connection with Ohio to make the exercise of jurisdiction over the Defendants reasonable. *Genesis*, 425 F.Supp.2d at 893 (citing *Southern Machine*, 401 F.2d at 384)). However, then the first two prongs of the Due Process analysis are satisfied, "an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *Id.* (citing *First National Bank of Louisville v. J. W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982)).

Factors considered under the "substantial connection" prong include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). Most of these considerations usually may be accommodated through means short of finding jurisdiction unconstitutional. *Id.*

Bringing non-residents to a distant forum must be balanced with Ohio's substantial interest in protecting companies that conduct significant business within Ohio's borders. *Stolle*, 2011 WL 6293323 at * 10. When minimum contacts have been satisfied, often the interests of

the plaintiff and the forum will justify serious burdens placed on the non-resident defendant.

*Meyerhoffer*, 2012 U.S. Dist. LEXIS 6250 at * 16-17; *see also Rightthing*, 2009 WL 249694 at

*5.

## MOTION TO TRANSFER VENUE

If this Court finds that it has personal jurisdiction, Klover and EPCO seeks to have this

case transferred to the United States District Court for the Western District of Missouri pursuant

to 28 U.S.C. §1404(a). Superior opposes a transfer of venue.

Section 1404(a) provides:

> For the convenience of the parties and witnesses, in the interest of justice, a
> district court may transfer any civil action to any other district or division where it
> might have been brought.

*Jamhour v. Scottsdale Insurance Co.*, 211 F.Supp.2d 941, 944-45 (S.D. Ohio 2002)(quoting 28

U.S.C. §1404(a)).

The threshold consideration under § 1404(a) is whether the action might have been

brought in another court if:

> a. the other court has jurisdiction over the subject matter of the action,
> b. venue is proper there, and
> c. the defendant is amenable to process issuing out of the other court.

*Id.* at 945 (citing *Sky Technologies Partners LLC v. Midwest Research Institute*, 125 F. Supp.2d

286, 291 (S.D. Ohio 2000)(citing *Continental Grain Co. V. The FBL-585*, 364 U.S. 19 (1960)).

Once it is determined that the threshold consideration is satisfied, the issue becomes

whether transfer is justified under the balance of the language of Section 1404(a). *Id.* The

balance of the language of Section 1404(a) provides that a matter may be transferred if the

transfer is for "the convenience of the parties and witnesses" and "in the interest of justice." *Id.*

The moving parties, Klover and EPCO in this case, have the burden of establishing the need for a transfer of venue. *Id.* (citing *Mead Data Central, Inc. v. West Publishing Co.*, 679 F. Supp. 1455, 1457 (S.D. Ohio 1987)). When considering a transfer, courts are to consider both the private interests of the parties and the public's interest in the administration of justice. *Id.* (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). The parties' interests, or the private interests, include:

> The relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of the case easy, expeditions and inexpensive.

*Id.* (quoting *Gulf Oil*, 330 U.S. at 508). The public interests include:

> Docket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law.

*Id.*

The Court has also considered additional factors when evaluating a motion to transfer venue. The additional factors include "the nature of the suit; the place of the events involved; …and the residence of the parties." *Id.* (citing *Sky Technology*, 125 F. Supp.2d at 291).

"The plaintiff's choice of forum is given considerable weight and the balance of convenience, considering all the relevant factors should be strongly in favor of a transfer before such will be granted." *Id.* at 946-47 (quoting *Hanning v. New England Mutual Life Insurance Co,* 710 F. Supp. 213, 214 (S.D. Ohio 1989)). However, plaintiff's choice of forum is entitled to somewhat less weight when the case is removed to federal court because the plaintiff is no longer in his or her chosen forum. *Id.* (citing *Sky Technology*, 125 F. Supp.2d at 292). Finally,

the decision on whether to grant a change of venue rests with the sound discretion of the trial court. *Id.* at 946.

## ANALYSIS

## Personal Jurisdiction Under Ohio's Long-Arm Statute

### Section 2307.382 (A)(1)

Klover initiated contacts with Ohio and had continuing obligations there pursuant to his employment with Superior. He applied to work at Superior and signed various agreements with Superior knowing that Superior was located in Ohio.

On an ongoing basis, Klover received Superior's confidential information and accessed Superior's confidential information. This confidential information was located and managed in Ohio.

Klover communicated with individuals located in Ohio. Also, he admits to traveling at least once to Ohio at which time he received confidential information from Superior. Finally, Klover's compensation and benefits were administered from Ohio by Superior.

Although Klover was, at all times relevant, located in Missouri, he transacted business in Ohio. Superior does not argue that EPCO is subject to personal jurisdiction under this branch of Ohio's long-arm statute, so this issue will not be considered.

### Section 2307.382 (A)(3)

Superior's Complaint alleges that Klover caused tortious injury in that he misappropriated trade secrets. Thus the issue is whether Klover misappropriated trade secrets by an act or omission in Ohio.

Klover was, at all times relevant, located in Missouri. Yet, Klover attended a sales

meeting in Ohio where he learned at least some of Superior's confidential, proprietary sales and customer information. While the act of using Superior's trade secrets may not have occurred in Ohio, the act of learning at least some of those trade secrets took place in Ohio. Thus, the issue becomes whether the act of learning the trade secrets is a misappropriation.

An act of misappropriation of trade secrets does not occur, in the context of a personal jurisdiction analysis, until the trade secrets are actually used. There are no allegations that Klover has actually used Superior's trade secrets in Ohio. Therefore, Superior has not presented evidence that Klover caused a tortious injury in Ohio. Section 2307.382(A)(3) does not confer personal jurisdiction over Klover.

Superior argues that, because an entity formed by a misappropriating employee ratifies the conduct, personal jurisdiction over the entity will lie. However, this argument need not be addressed because section 2307.382(A)(3) does not confer personal jurisdiction over the alleged misappropriating employee.

Finally, Superior cites *Stolle* for the proposition that**,** if a misappropriation act occurred in Ohio, the act brings the actor within the "jurisdictional ambit" of section (A)(3). However, *Stolle's* analysis regarding section (a)(3) was addressing the violation of copyright laws and not the misappropriation of trade secrets. Copyright laws are presumably violated when copies are illegally made.

### Section 2307.382 (A)(4)

Section (A)(4) confers personal jurisdiction where a defendant's tortious conduct occurs outside of Ohio but the tortious injury occurs in Ohio and the defendant conducts regular business in Ohio, engages in any other persistent course of conduct or collects substantial

revenue from activities in Ohio. In this case, Klover's alleged tortious conduct occurred outside of Ohio and Klover does not collect substantial revenue from activities in Ohio. So the issues become whether Klover's alleged tortious conduct caused an injury in Ohio and, if so, whether Klover conducts regular business in Ohio or engages in any other persistent course of conduct in Ohio.

On the first issue, Klover's alleged disclosure of trade secrets outside of Ohio harms Superior who is located in Ohio. Thus, Klover's alleged tortious conduct causes an injury in Ohio.

On the second issue, Klover affirms that he has never conducted or solicited any business in Ohio, and that he did not personally derive any revenue from goods sold in Ohio or services rendered in Ohio. However, Klover received compensation and benefits from Ohio, regularly communicated with Superior employees located in Ohio and routinely received sales reports from Superior located in Ohio. The receipt of compensation and benefits from Ohio, regular communications with an employer in Ohio and the routine receipt of sales reports from Ohio by someone located outside of Ohio is engagement in a persistent course of conduct in Ohio. *See International*, 2012 WL 1902557 at *5; *Rightthing,* 2009 WL 249694 at *4.

Klover and EPCO rely upon *Buckeye*, 2007 WL 641824, and *Weiskopf Industries Corp. v. Hidden Valley Towel, Inc.*, No 67436, 1994 WL 716342 (Ohio Ct. App. Dec. 22, 1994). However, both are distinguished from this case.

In *Buckeye*, the court found that section (A)(4) did not confer personal jurisdiction because there was no showing that the defendants engaged in a persistent course of business in Ohio. Here, there is.

In *Weiskopf*, the plaintiff failed to establish the existence of an injury in Ohio. Here, that is not the case.

Thus Superior has shown that Klover's alleged tortious conduct caused an injury in Ohio and that Klover engaged in a persistent course of conduct in Ohio. Therefore, Section (A)(4) confers personal jurisdiction over Klover.

Superior also argues that section (A)(4) confers personal jurisdiction over EPCO. On the first issue, EPCO's alleged use of Superior's trade secrets outside of Ohio harms Superior who is located in Ohio. Thus, EPCO's alleged tortious conduct causes an injury in Ohio.

EPCO does not do business in Ohio and does not derive any revenue from goods sold or services rendered in Ohio. However, since Klover formed EPCO before he left Superior, at least one of EPCO's agents, Klover, engaged in a persistent course of conduct in Ohio. In addition, EPCO made purchases from Superior through Klover and allegedly obtained Superior's confidential customer information from Klover. The engagement in a persistent course of conduct in Ohio by an agent, making purchases from an Ohio company and allegedly obtaining an Ohio company's confidential customer information from the agent is engagement in a persistent course of conduct in Ohio. *See International*, 2012 WL 1902557 at *5; *Rightthing*, 2009 WL 249694 at *4.

Thus Superior has shown that EPCO's alleged tortious conduct caused an injury in Ohio and that EPCO engaged in a persistent course of conduct in Ohio. Therefore, Section (A)(4) confers personal jurisdiction over both EPCO and Klover.

### Section 2307.382 (A)(6)

Section (A)(6) confers personal jurisdiction when there is a tortious injury in Ohio by an

act outside of Ohio committed with the purpose of injuring persons in Ohio when the tortfeasor might reasonably have expected that some persons would be injured in Ohio. As determined above, Klover's and EPCO's misappropriation of trade secrets outside of Ohio has injured Superior in Ohio. Thus, the issue becomes whether Klover and EPCO might reasonably have expected Superior to be injured in Ohio by their tortious acts.

Klover, as an agent for EPCO and while still employed by Superior, learned Superior's confidential customer information. Also, EPCO, through its agent Klover, and while Klover was still employed by Superior, knowingly obtained below-market pricing for Superior products. EPCO, through its agent Yan while Yan was still under contract to Superior, obtained Superior's confidential chemical formulas and processes. Finally, EPCO, through Klover, Luke Ungashick and Joe Murphy, allegedly confirmed knowledge of their wrongdoing when they told their employees to conceal the presence of Yan and Klover. Thus, there is evidence that Klover and EPCO might reasonably have expected Superior to be injured in Ohio by their alleged tortious acts. *See Safety*, 2012 WL 2374984; *Meyerhoffer*, 2012 U.S. Dist. LEXIS 6250

Superior has identified evidence that Klover's and EPCO's misappropriation of trade secrets outside of Ohio has injured Superior in Ohio. Superior has also presented evidence that Klover and EPCO might reasonably have expected Superior to be injured in Ohio by their alleged tortious acts. Therefore, section (A)(6) confers personal jurisdiction over Klover and EPCO.

## Due Process

Having found that Ohio's long-arm statute confers personal jurisdiction over Klover and EPCO, the Court must next determine if this personal jurisdiction comports with the Due Process

Clause of the United States Constitution. The Sixth Circuit has established a three-part test to determine whether personal jurisdiction comports with the Due Process Clause. Each of the three parts will be addressed as they apply to this matter.

**"Purposeful Availment"**

The "purposeful availment" prong of the constitutional analysis is coextensive with the "transacting any business" prong of Ohio's long-arm statute. As determined above, the "transacting any business" prong of Ohio's long-arm statute confers personal jurisdiction on Klover. Therefore, exercising personal jurisdiction over Klover does not offend the "purposeful availment" prong of the constitutional analysis.

As for EPCO, the "purposeful availment" prong is satisfied when a defendant avails itself of the privilege of acting in the forum state or causing a consequence in the forum state. *Meyerhoffer*, 2012 U.S. Dist. LEXIS 6250 at *1-11(citing *Health Care Industries, Inc. v Logan Park Care Center, Inc.*, 573 F. Supp. 360, 362 (S.D. Ohio 1983)). As determined above, EPCO engaged in a persistent course of conduct in Ohio and has caused a consequence in Ohio. Therefore, exercising personal jurisdiction over EPCO does not offend the "purposeful availment" prong of the constitutional analysis.

Klover and EPCO rely on *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000) to argue that Superior is unable to satisfy the "purposeful availment" prong. However, the allegations in *Calphalon* regarded a contract dispute with the result that the few communications directed to Ohio and meetings in Ohio were merely "fortuitous." *Calphalon*, 228 F.3d at 723. In this case, the allegations, among others, involve misappropriation of trade secrets from an Ohio company. The misappropriation of trade secrets belonging to an Ohio company causes

consequences in Ohio. *See e.g. Meyerhoffer*, 2012 U.S. Dist. LEXIS 6250 at *10-11; *Safety*, 2012 WL 2374984 at *2 (distinguishing Calphalon).

## "Arising From"

To satisfy this prong, the Superior's causes of action must have a substantial connection with Ohio. If Klover's and EPCO's contacts with Ohio are related to the operative facts of the controversy, then an action will have arisen from those contacts. *Stolle*, 2011 WL 6293323 at *4. In the context of a trade secret claim, as made by Superior, the operative facts relate to the state where the defendant acquired the trade secrets. *Id.*

In this case, although Klover may have resided in Missouri, he acquired the trade secrets from an Ohio company and acquired some of those trade secrets while in Ohio. Also, such acts tie EPCO, a company formed by Klover, a former employee, by virtue of EPCO's ratification of the misappropriation. *Id.* at *26.

The exercise of personal jurisdiction over Klover and EPCO does not offend the "arising from" prong of the constitutional analysis." The operative facts relate to Klover's employment with Superior. Klover's allegedly tortious activities and breach of obligations to Superior create a substantial connection to Ohio. Finally, Klover's acts were allegedly performed on behalf of and were ratified by EPCO.

## "Substantial Connection"

The "substantial connection" prong requires that the exercise of personal jurisdiction over a defendant be reasonable. Generally, when the first two prongs of the Due Process analysis are satisfied, there is an inference that this prong is satisfied.

In this case, while not all of the witnesses may be located in Missouri, traveling to Ohio

will create a burden on Klover and EPCO. Yet, Superior has an interest in obtaining convenient and effective relief. Also, the judicial system has an interest in obtaining the most efficient resolution of the controversy. In the final analysis, bringing non-residents to Ohio must be balanced with Ohio's interest in protecting companies that conduct business in Ohio. Finally, Ohio's long-arm statute confers personal jurisdiction in Ohio over Klover and EPCO. Therefore, the exercise of personal jurisdiction over Klover and EPCO in Ohio is reasonable under the circumstances and does not offend the Due Process Clause.

<u>**Conclusion Regarding Personal Jurisdiction**</u>

Sections (A)(1), (A)(4) and (A)(6) of Ohio's long-arm statute confer personal jurisdiction over Klover in this matter. Sections (A)(4) and (A)(6) confer personal jurisdiction over EPCO. Finally, the exercise of personal jurisdiction over Klover and EPCO in this matter does not offend the Due Process Clause of the U.S. Constitution. Therefore, Klover's and EPCO's Motion To Dismiss for Lack of Personal Jurisdiction (doc. #17) is DENIED.

<u>**Transfer of Venue**</u>

Should this Courts determine that it may exercise personal jurisdiction over Klover and EPCO, which it has, Klover and EPCO seek to have this matter transferred to the United States District Court for the Western District of Missouri pursuant to 28 U.S.C. § 1404(a). Section 1040(a) permits a court to transfer any civil action to any other district where the action might have been brought for the convenience of the parties and witnesses and in the interest of justice.

The first requirement is satisfied. Klover and EPCO admit that they are subject to personal jurisdiction in the Western District of Missouri and venue would lie there. Superior does not argue otherwise. Thus, this action might have been brought in the United States District

Court for the Western District of Missouri.

Once this first requirement is satisfied, the issue becomes whether transfer is justified for the convenience of the parties and witnesses and in the interest of justice. Regarding the convenience of the parties, Klover and EPCO are located in Missouri and have identified several other witnesses located in the Kansas City area. Superior is located in Ohio, filed its complaint in Ohio, maintains its corporate functions and IT functions in Ohio and anticipates calling Ohio witnesses. Further, neither party contends that any witnesses would not be available for trial in Ohio or in Missouri. While Klover and EPCO say being required to appear in court in Ohio would result in severe financial hardship and that several potential witnesses are located in the Kansas City area, they have not overcome the balance of the hardships between them and Superior.

Regarding the interest of justice, Ohio courts have an interest in adjudicating disputes regarding Ohio companies. The congestion of this Court's docket does not currently support transfer. Further, based upon the current status of this case, Ohio law will be applied to some of Superior's claims. Consideration of the interests of justice weigh in favor of this Court retaining jurisdiction.

Venue is proper in either this Court or the District Court for the Western District of Missouri. Further, the convenience of the parties and witnesses and in the interest of justice does not weigh in favor of a transfer. Therefore, this Court will retain jurisdiction, and Klover's and EPCO's Motion To Transfer Venue (doc. #17) is DENIED.

**DONE** and **ORDERED** in Dayton, Ohio this 29th day of November, 2012.

**s/Thomas M. Rose**

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record